IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

---

DELILAH TUCKER,

            Plaintiff,           OPINION AND ORDER

v.                                   08-cv-0024-bbc

GARY E. GEORGE and
DAN ROSSMILLER,

            Defendants.

---

Because Judge Shabaz will be convalescing from shoulder surgery for a period of not less than two months beginning February 1, 2008, I have assumed administration of the cases previously assigned to him, including this one. In this civil rights action brought pursuant to 42 U.S.C. § 1983, plaintiff Delilah Tucker alleges that her former employers, former state senator Gary George and his chief of staff Dan Rossmiller, violated her constitutional right to free speech by retaliating against her for speaking out against certain workplace practices. Plaintiff also brings claims pursuant to 42 U.S.C. § 1985 and the due process clause of the United States Constitution.

Before the court is the motion of defendant Dan Rossmiller to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). Because I find that it is impossible to conclude from

1

the complaint that the speech for which plaintiff was allegedly fired was made pursuant to her official duties or was purely a matter of private concern, defendant's motion to dismiss plaintiff's § 1983 claim will be denied. I am also denying defendant's motion to dismiss plaintiff's conspiracy claim because the alleged dates of the conspiracy are clear enough from the complaint. Defendant's motion to dismiss plaintiff's due process claim will be granted because plaintiff has failed to allege facts sufficient to state a plausible violation of her right to procedural due process.

## ALLEGATIONS OF THE COMPLAINT

At all times material to this action, defendant Gary George was a Wisconsin State Senator. Defendant Dan Rossmiller was George's chief of staff. In April 2001, plaintiff was hired temporarily as a member of George's senate office staff. In June 2001, she was hired as a full time legislative aide, working under the supervision of defendants George and Rossmiller.

Within a few months of being hired, plaintiff began to object to certain practices within the work place that appeared to plaintiff to violate certain legal and policy standards. These practices included:

> plaintiff's being assigned during state paid time to handle personal and family-related business of defendant George;

plaintiff's being assigned during state paid time to engage in political campaign work;

the use of state funds to recruit a foreign European female at a time when plaintiff was being told that her job was being eliminated because of "budget constraints;" and

the display of pornography during working hours while at the office of defendants.

As a result of plaintiff's objections to these practices, plaintiff was subjected to retaliatory actions. These actions included belittlement and humiliation in front of her coworkers and peers, threats of dismissal if she did not clean up her "sister act," the orchestration of a scheme to lay plaintiff off, the physical restraint of plaintiff when she attempted to leave the office during an argument in which she voiced opposition to certain office practices that plaintiff believed violated state policies and procedures and ultimately, the termination of her employment.

Plaintiff brought these matters to the attention of defendants George and Rossmiller and to "other persons in authority." None of these individuals took any action to improve plaintiff's work conditions. Instead, defendant George told plaintiff that she should "start looking for employment elsewhere" and said that a reduction in staff would be necessary "due to budgetary considerations." When he made this statement, defendant George knew that budgetary considerations did not require a reduction in office staff and he misrepresented the financial resources available to his office. He also knew that he was

3

actively recruiting another person to fill the position then held by plaintiff. This person was white, of European origin, younger than plaintiff and not a citizen of the United States.

Plaintiff again raised her concerns and the proposed termination of her employment with defendants George and Rossmiller and the Senate Chief Clerk. Plaintiff explained that she believed defendant George was retaliating against her.

Plaintiff alleges that defendants George and Rossmiller "jointly and in concert engaged in a pattern of retaliatory conduct designed for the sole purpose of affecting the terms and conditions of her employment in an adverse fashion." Complaint, dkt. #1, ¶1.

## OPINION

### A. Legal Standard

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, --- U.S. ----, 127 S.Ct. 1955, 1974 (2007). A complaint that satisfies Rule 8(a)'s pleading requirements, that is, one that contains facts adequate to put a defendant on notice of the plaintiff's claim, see Airborne Beepers & Video, Inc. v. AT & T Mobility LLC, 499 F.3d 663, 667 (7th Cir. 2007), might still warrant dismissal under Rule 12(b)(6) if the facts pleaded cannot result in any plausible relief, see Exelon Corp., 495 F.3d at 785 (upholding dismissal for failure to state a claim where arbitral award submitted with the complaint barred any plausible relief).

...

In deciding a motion to dismiss, the court will accept plaintiff's factual allegations as true, drawing all reasonable inferences in plaintiff's favor. Savory v. Lyons, 469 F.3d 667, 670 (7th Cir. 2006).

### B. First Amendment Claim

Defendant Rossmiller contends that plaintiff's First Amendment claim must be dismissed under Garcetti v. Ceballos, 126 S. Ct. 1951 (2006). In that case, the Court refined its test (known as the Connick-Pickering test) for deciding whether a public employee's speech is entitled to First Amendment protection. In applying this test, courts determine whether the employee was speaking "as a citizen on a matter of public concern." Connick v. Myers, 461 U.S. 138, 147-48 (1983); Pickering v. Bd. of Education, 391 U.S. 563, 568 (1968). In Garcetti, 126 S. Ct. at 1959, the Court said that to determine whether an employee's expressions were made "as a citizen on a matter of public concern," the first task is to determine was whether the employee was speaking "pursuant to [her] official duties." If so, then the employee was "not speaking as [a] citizen[] for First Amendment purposes, and the Constitution does not insulate [her] communications from employer discipline." Id. at 1960.

As defendant points out, after Garcetti, federal appellate courts have affirmed the dismissal of First Amendment claims on the basis of the "official duties" disqualifier. See,

5

e.g. Vose v. Kliment, 506 F.3d 565 (7th Cir. 2007) (plaintiff's statements about alleged misconduct of detectives in major case unit were made pursuant to his official responsibilities as supervisor of narcotics unit and therefore district court erred in denying defendants' motion to dismiss on qualified immunity grounds); Sigsworth v. City of Aurora, Illinois, 487 F.3d 506, 511 (7th Cir. 2007) (allegations in complaint indicated that, by complaining to supervisors about alleged misconduct by members of drug task force, detective was "merely doing what was expected of him" as member of task force); Weisbarth v. Geauga Park District, 499 F.3d 538 (6th Cir. 2007) (affirming dismissal of park ranger's complaint under Garcetti where ranger voiced concerns about departmental morale and performance issues to consultant hired by ranger's employer to interview employees as part of departmental evaluation). In each of these cases, however, the plaintiff's complaint contained far more detail about the plaintiff's job responsibilities and the circumstances in which the speech was made than does plaintiff's complaint here. As the court explained in Weisbarth, 499 F.3d at 546,

> [t]he facts required to reach th[e] conclusion [that plaintiff's speech was made pursuant to her official duties] --- such as Weisbarth's employment duties, the impetus for her speech, the setting of her speech, the speech's audience, and its general subject matter --- are all set forth in the pleadings.

In other words, plaintiffs in the cases cited above pleaded themselves out of court.

6

By contrast, plaintiff's complaint in this case contains no allegations about what her job as a legislative aide entailed, to whom she initially voiced her objections or the setting in which she voiced those objections. Although it is clear that the subject matter of plaintiff's speech concerned matters that affected plaintiff's job directly, the Court made it clear in Garcetti, 126 S.Ct. at 1959, that the fact that a plaintiff's speech concerns the subject matter of her employment is not dispositive. See also Sigsworth, 487 F.3d at 511 ("Garcetti is not a categorical rule that deprives public employee speech of First Amendment protection whenever that employee complains of work-related misconduct"). Further, although the complaint contains no suggestion that plaintiff voiced her concerns to anyone except her employers or their superiors, a plaintiff need not express her views publicly in order for her speech to be protected under the First Amendment. Id. In sum, although I agree with defendant that dismissal is proper when it is clear from the complaint that the plaintiff's speech was made pursuant to her official duties, such clarity is lacking in this case.

Defendant contends that even if dismissal is not appropriate under Garcetti, he is nonetheless entitled to dismissal on qualified immunity grounds because it was far from "clearly established" at the time of the alleged violations that plaintiff's alleged speech met the "public concern" requirement. Finsel v. Cruppenink, 326 F.3d 903, 906 (7th Cir. 2003) (second part of qualified immunity inquiry is whether constitutional right alleged by plaintiff was clearly established at time of alleged violation). However, whether an employee's speech

7

relates to a matter of public concern is a fact-intensive question that focuses on the content, form and context of the employee's statement. Miller v. Jones, 444 F.3d 929, 935 (7th Cir. 2006). Plaintiff's complaint sheds little light on these subjects apart from content. Viewing plaintiff's allegations in the light most favorable to plaintiff, her complaints that a state senator was using a member of his staff to carry out personal and campaign-related tasks arguably touched on a matter of public concern. Until the record is developed further, I decline to grant defendant's motion for qualified immunity.

## II. § 1985 Conspiracy Claim

Defendant argues that plaintiff's claim pursuant to 42 U.S.C. § 1985 must be dismissed because plaintiff failed in her complaint to specify the approximate date for the alleged conspiracy. Loubser v. Thacker, 440 F.3d 439, 442-443 (7th Cir. 2006) (plaintiff bringing claim of conspiracy must allege parties, general purpose and approximate date of conspiracy) (citations omitted). Although I agree that the outlines of plaintiff's conspiracy claim are not crystal clear, reading the complaint as a whole I am satisfied that plaintiff has alleged sufficient facts to put defendants on notice of the approximate date of the conspiracy. Plaintiff alleges that defendants George and Rossmiller "jointly and in concert engaged in a pattern of retaliatory conduct designed for the sole purpose of affecting the terms and conditions of her employment in an adverse fashion," Complaint, dkt. #1, ¶1; that the

8

retaliatory conduct included the orchestration of a "lay off" scheme and the termination of her employment, id. at ¶10; that defendants engaged in this conduct in retaliation for her objecting to various practices within the work place, id.; and that she began voicing these objections "within a few months" of her hiring in April 2001. Id. at ¶9.  She does not allege that any retaliatory acts occurred after she was terminated.  Reading the complaint's allegations in favor of plaintiff, it is reasonable to infer that the alleged conspiracy was in place from the time the retaliatory conduct began until plaintiff's employment was terminated.  This is sufficient.

## C. Due Process Claim

To prove a violation of her procedural due process rights, plaintiff must show that the state deprived her of a protected liberty or property interest and that the deprivation occurred without adequate due process.  Salas v. Wisconsin Dept. of Corrections, 493 F.3d 913, 926 (7th Cir. 2007).  Plaintiff has not alleged that she had any protected liberty or property interest.  Even assuming the alleged interest at stake is her interest in not being laid off from her job, plaintiff never alleges what type of process she was due, much less that defendants deprived her of this process.  Absent such allegations, the complaint fails to state any plausible due process claim.

ORDER

IT IS ORDERED that the motion of defendant Dan Rossmiller to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED IN PART and DENIED IN PART. The motion is DENIED as to plaintiff's claims under 42 U.S.C. §§ 1983 and 1985. The motion is GRANTED as to plaintiff's due process claim.

Entered this 13th day of March, 2008.

BY THE COURT:

Barbara B. Crabb
BARBARA B. CRABB
District Judge

10