IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

---

DELILAH TUCKER,

                Plaintiff,              OPINION AND ORDER

     v.                                      08-cv-024-bbc

GARY E. GEORGE
and DAN ROSSMILLER,

                Defendants.

---

      Plaintiff Delilah Tucker, a former legislative aide for former State Senator Gary George, has filed this civil action against George and his former chief of staff, accusing them of violating her constitutional right to free speech by retaliating against her for speaking out against certain workplace practices. The case is before the court on defendant George's motion to disqualify plaintiff's counsel, Victor Arellano and the law firm of Lawton & Cates, S.C., from representing plaintiff. Defendant George contends that two of Lawton & Cates's shareholders, Peggy Lautenschlager and Dan Bach, have a conflict of interest arising from their participation in a state investigation of George when they served as Wisconsin Attorney General and Deputy Attorney General, respectively, and that this conflict must be imputed to the entire Lawton & Cates firm. (Defendant also contended that Arellano was

1

disqualified under the rule prohibiting a lawyer from appearing as a witness; however, defendant has withdrawn that ground as a basis for his motion.) Because I find that plaintiff has failed to sufficiently rebut the presumption that Lautenschlager and Bach disclosed confidential information about George to other members of the Lawton & Cates firm, I am granting the motion.

From the parties' submissions and the record, I find the following facts for the purpose of deciding the instant motion.

## FACTS

Defendant Gary George is a former Wisconsin State Senator from Milwaukee. In April 2001, plaintiff was hired temporarily as a member of George's senate office staff. In June 2001, she was hired as a full-time legislative aide, working under the supervision of George and his chief of staff, Dan Rossmiller. At some later time, plaintiff was terminated from this employment.

Victor Arellano is a lawyer with the firm of Lawton & Cates, S.C. He began representing plaintiff in early 2002 with regard to her claims arising out of her employment with George. Arellano filed a complaint on behalf of plaintiff with the State of Wisconsin Personnel Commission; the complaint was transferred to the Equal Rights Division of the Wisconsin Department of Workforce Development. In 2007, Arellano filed a civil

2

complaint on plaintiff's behalf against George and Rossmiller in the Circuit Court for Dane County. The complaint alleged that George and Rossmiller retaliated against plaintiff after she complained of various workplace practices that she perceived were illegal, such as being required to handle personal, campaign and family-related business for George during state paid time. In January 2008, defendants removed the case to this court. Assistant attorney general Richard Moriarty, is representing defendant Rossmiller in this lawsuit. In March 2008, the state hired attorney David Geier as special counsel to represent defendant George.

In 2003, the United States indicted George, alleging that he had used his legislative office for personal gain. George was accused of obtaining kickbacks in exchange for exercising his political clout in connection with certain federally-funded programs. The indictment also accused George of using state employees to perform personal work for him. As a result of the federal charges, in November 2003, Wisconsin Governor James Doyle ordered a state investigation of George. At the time, Peggy Lautenschlager was Attorney General and Dan Bach was Deputy Attorney General. Although neither Lautenschlager nor Bach was in charge of the investigation, they participated in it and were privy to privileged and confidential information about George.

Upon leaving public service in 2007, both Lautenschlager and Bach became shareholders with the Madison law firm of Lawton & Cates, S.C., the firm representing plaintiff in this case. On or about May 16, 2008, Arellano served a subpoena for production

3

of documents on the current attorney general, seeking production of state and federal investigation reports related to George's senate office. On May 28, 2008, Moriarty wrote to Arellano, stating that he had ethical concerns about Lawton & Cates's continued representation of Tucker. Dkt. #32, Part 2. Moriarty noted that Lautenschlager and Bach had been in office at the time of the investigation referred to in the subpoena served on the current attorney general. On June 13, 2008, Bruce Davey, a lawyer employed on an "of counsel" basis by Lawton & Cates, responded to Moriarty's letter. In the letter, Davey told Moriarty that Lautenschlager and Bach "have had no involvement in the [Tucker] case and we can ensure that for the duration of the case they will have no involvement in the case."

On June 20, 2008, Assistant Attorney General Steven Means filed objections to the subpoena on behalf of the attorney general, one of which was that the subpoena was burdensome because it requested information that must be kept confidential under various privileges or secrecy laws. In a letter accompanying the objections, Means wrote:

> [I]t appears that your partners Dan Bach and Peg Lautenschlager actually obtained privileged and confidential information about the Gary George investigation while working at the Department of Justice. Both were also involved, to some extent, in strategic issues. Neither was lead counsel or had day-to-day responsibility. However, the involvement of Mr. Bach, in particular, was beyond the usual level of involvement that would be expected of a Deputy Attorney General.

In response to the instant motion to disqualify, Lautenschlager and Bach have submitted affidavits stating that they remember little from the state's investigation of George

4

and that they have not disclosed any information about George to anyone at Lawton & Cates. Lautenschlager and Bach have not had any involvement in Tucker's lawsuit against George, have not had access to the file and have not discussed the case with Arellano. The files related to Tucker's case are stored in a locked filing cabinet when Arellano or his staff are not using them and neither Lautenschlager nor Bach has access to either physical or electronic versions of the file. The paralegal and administrative staff who work with Arellano rarely work with Lautenschlager or Bach. Sometime after May 28, 2008, the paralegal and administrative staff who work with Arellano were instructed not to discuss Tucker's case with Lautenschlager or Bach or with others in their presence.

Lawton & Cates has 14 lawyers and 3 lawyers working in an "of counsel" status. Http://lawtoncates.com (visited July 28, 2008). Shareholders employed by Lawton & Cates are paid a monthly draw. They are expected to generate fees at levels well above the amount of the draw and are not eligible for additional compensation until their fees exceed the expected level. Shareholders are not credited with fees from a case unless they were responsible for originating the case or they actually work on the case. Thus, any fees obtained from plaintiff's case would not benefit either Lautenschlager or Bach directly.

Although defendant Rossmiller has submitted evidence related to the role that Lautenschlager and Bach played in the state's investigation of George while they were

5

heading the attorney general's office, he has expressly declined to take a position on the disqualification motion.

OPINION

I. LEGAL STANDARDS

In deciding attorney disqualification motions, this court looks for guidance to the Wisconsin Supreme Court Rules of Professional Conduct for Attorneys, the precepts of the Code of Professional Responsibility (now largely replaced by the Model Rules of Professional Conduct) and the prior case law. Weber v. McDorman, 2000 WL 34237498, *1 (W.D. Wis. Aug. 11, 2000) (No. 00-C-381-C); DCA Food Industries, Inc. v. Tasty Foods, Inc., 626 F. Supp. 54, 57 (W.D. Wis. 1985). The ethical codes adopted by the Wisconsin Supreme Court are based upon the American Bar Association's Model Rules. Wisconsin Supreme Court Order No. 04-07, Jan. 5, 2007 (available at http://www.wicourts.gov/supreme/sc_hearing_rules.jsp) (visited July 28, 2008). Accordingly, the standards applicable to disqualification motions brought under either set of rules are "essentially identical." Callas v. Pappas, 907 F. Supp. 1257, 1260 (E.D. Wis. 1995). Both the ABA rules and the Wisconsin rules were reviewed and updated recently to reflect developments in the law and the legal profession since the adoption of the Model

6

Rules in 1983. Timothy J. Pierce & Dean R. Dietrich, "Wisconsin's New Rules of Professional Conduct for Attorneys," Wisconsin Lawyer, Vol. 80, No. 2, Feb. 2007.

The disqualification motion requires the court to balance several interests. Defendant George has an interest in ensuring that his adversary does not have access to confidential information about him that is obtainable only from Lautenschlager and Bach. The bar and this court have an interest in maintaining the integrity and favorable public image of both the legal profession and the judicial system by preventing even the "appearance of professional impropriety." Code of Professional Responsibility, Canon 9. At the same time, however, plaintiff "has an important interest in enjoying the counsel of [her] choice, and the prophylactic rule [of disqualification] ought not be applied so indiscriminately as to undercut this interest without justification." Moritz v. Medical Protective Co., 428 F. Supp. 865, 874 (W.D. Wis. 1977). See also Freeman v. Chicago Musical Instrument Co., 689 F.2d 715, 721-722 (7th Cir. 1982) (citations omitted) (describing disqualification as "a drastic measure which courts should hesitate to impose except when absolutely necessary"). Further, motions to disqualify should be resolved with extreme caution because they may be used abusively as a litigation tactic. Freeman, 689 F.2d at 722.

It is with these competing interests in mind that I consider the instant motion. Defendant George contends that because Lautenschlager and Bach are members of Lawton & Cates, the firm is disqualified from continuing to represent plaintiff under Wisconsin

Supreme Court Rule 20:1.11, which establishes special rules regarding conflicts of interest for former government officers and employees.[1] Defendant George presents two alternative grounds under the rule why Lautenschlager and Bach are disqualified. First, he contends that their participation in this case is barred by Rule 20:1.11(a), which provides, in relevant part, that a lawyer who has formerly served as a public officer or employee of the government

> shall not otherwise represent a client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency gives its informed consent, confirmed in writing, to the representation.

SCR 20:1.11(a)(2). Alternatively, he contends that Bach and Lautenschlager are disqualified under subsection (c) of the rule, which provides:

> Except as law may otherwise expressly permit, a lawyer having information that the lawyer knows is confidential government information about a person acquired when the lawyer was a public officer or employee, may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person. As used in this rule, the term "confidential government information" means information that has been obtained under governmental authority and which, at the time this rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose and which is not otherwise available to the public.

---

[1]Contrary to defendant's contention, neither Rule 20:1.6 nor Rule 20:1.10 applies to this motion. Rule 20:1.6 sets forth general rules governing "disclosure by a lawyer of information relating to the representation of a client during the lawyer's representation of a client." SCR 20:1.6., ABA Comment [1]. Lautenschlager and Bach are not representing George. As for Rule 20:1.10, subsection (d) specifies that "[t]he disqualification of lawyers associated with former or current government lawyers is governed by SCR 20:1.11."

The Rules seek to diminish the risk that a government lawyer leaving public service for the private sector could exploit his or her public office for the advantage of the private client or could use confidential information gained through the lawyer's public service to gain an unfair advantage over the client's adversary. SCR 20:1.11, ABA Comments [3] and [4].

If a lawyer is disqualified from representation under either paragraph (a) or (c), a firm with which the lawyer is associated may undertake or continue representation in the matter only if the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom. SCR 20:1.11(b)(1), (c). "'Screened' denotes the isolation of a lawyer from any participation in a matter through the timely imposition of procedures within a firm that are reasonably adequate under the circumstances to protect information that the isolated lawyer is obligated to protect." SCR 20:1.0(n). Accord Cromley v. Board of Educ. of Lockport Township High School, 17 F.3d 1059, 1065 (7th Cir. 1994) (presumption of shared confidences can be rebutted by demonstration "that 'specific institutional mechanisms' (e.g., 'Chinese Walls') had been implemented to effectively insulate against any flow of confidential information from the 'infected' attorney to any other member of his present firm"). Courts evaluate the effectiveness of such insulating procedures, or screens, on a case-by-case basis. Schiessle v. Stephens, 717 F.2d 417, 421 (7th Cir. 1983). Factors relevant to this evaluation are

9

the size and structural divisions of the law firm involved, the likelihood of contact between the "infected" attorney and the specific attorneys responsible for the present representation, [and] the existence of rules which prevent the "infected" attorney from access to relevant files or other information pertaining to the present representation or which prevent the tainted lawyer from sharing in the fees derived from such litigation.

Id.

Thus, deciding the instant motion requires two steps:  1) deciding whether Lautenschlager or Bach are personally disqualified from representing plaintiff; and 2) deciding whether that disqualification must be imputed to the entire Lawton & Cates firm.

## II. APPLICATION OF LEGAL STANDARDS

The first of these two steps requires little discussion. Although plaintiff disputes whether defendant George has shown that Lautenschlager or Bach has a conflict of interest that would disqualify her or him under paragraph (a), she appears to concede that they are disqualified personally from representing her under paragraph (c). Indeed, although this is not a classic case of "side switching," there is little dispute that Lautenschlager and Bach acquired confidential government information about George while in the attorney general's office. Although plaintiff suggests that defendant ought to do more to show that the information known to Lautenschlager and Bach is not a matter of public record, she does not suggest how defendant could do this. The attorney general's office has declined for the time

being to produce the records relating to the George investigation and has objected to the subpoena partly on the ground that it requests information that must be kept confidential. I am satisfied from Means's letter and the objections to the subpoena that Lautenschlager and Bach have confidential governmental information about George that could be used to his disadvantage in this lawsuit.

Thus the question is whether Lautenschlager and Bach have been screened effectively from the Tucker matter so as to prevent their knowledge from being imputed to the entire firm. Plaintiff insists that they have been, pointing out that neither lawyer has physical or electronic access to the file and that the staff who work with Arellano have been instructed not to discuss this case with them or others in their presence. As defendant George points out, however, it appears that Lawton & Cates did not implement these procedures until *after* the potential ethical violation was brought to its attention. Relying on LaSalle National Bank v. County of Lake, 703 F.2d 252 (7th Cir. 1983), defendant argues that a screening measure implemented after-the-fact fails to rebut the presumption that Lautenschlager or Bach disclosed confidential information about George to other members of Lawton & Cates before the screen was in place.

In LaSalle, 703 F.2d at 259, the court of appeals held that the district court had not abused its discretion in extending the disqualification of a former government lawyer to his entire firm. Although the lawyer had averred that he had discussed no relevant information

11

gained from his prior government service with anyone at the law firm, the court observed that "no specific institutional mechanisms were in place to insure that that information was not shared, even if inadvertently" until the disqualification motion was filed, six months after the lawyer joined the firm. Id. In upholding the district court, the Seventh Circuit recognized that "this is an area in which the relevant information is singularly within the ken of the party defending against the motion to disqualify and in which the reputation of the bar as a whole is implicated." Id. Although it recognized that it "may be difficult or even impossible" for law firms to identify potential conflicts of interest at the time lawyers are hired, the court expressed its view that "*timely* screening arrangements are essential to the avoidance of firm disqualification." Id. at n.3 (emphasis in original). Wisconsin's Rules of Professional Conduct are to the same effect. SCR 20:1.0, ABA Comment [10] ("In order to be effective, screening measures must be implemented as soon as practical after a lawyer or law firm knows or reasonably should know that there is a need for screening").

The court's decision in Schiessle, 717 F.2d 417, is in accordance with this view. In that case, a lawyer moved from the law firm representing defendant to the firm representing plaintiff. After finding that the lawyer had knowledge of plaintiff's lawsuit as a result of his previous position, the court found that the lawyer's new firm was disqualified because there were no "specific institutional mechanisms" in place at the time the lawyer was hired to insulate him from plaintiff's case. Id. at 421. The court reached this conclusion

12

notwithstanding the lawyer's sworn denial that he had not discussed the merits of plaintiff's case or discussed any information that he might have gained from his affiliation with his prior firm.

Thus, "[t]he predominant theme running through the [Seventh Circuit's] prior decisions is that disqualification is required when screening devices were not employed or were not timely employed." United States v. Goot, 894 F. 2d 231, 235 (7th Cir. 1990) (citations omitted). In this case, plaintiff has failed to demonstrate that Lawton & Cates employed a timely screening device to prevent the inadvertent disclosure of information from Lautenschlager and Bach. Notably, although plaintiff asserts that Lautenschlager and Bach "were, in fact, screened from the matter," it is unclear when that screen was put in place or what procedures were implemented. It appears that, in asserting that Lautenschlager and Bach were "screened," plaintiff is referring merely to the fact that neither lawyer has had any involvement with the case or access to the file and that both have denied disclosing any information about George to anyone at Lawton & Cates. However, the rule clearly contemplates the implementation of some formal mechanism to isolate the tainted attorney, not merely a *de facto* screen that occurred by happenstance. Accord Craig A. Peterson, Rebuttable Presumptions and Intra-Firm Screening: The New Seventh Circuit Approach to Vicarious Disqualification of Litigation Counsel, 59 Notre Dame L. Rev. 399, 411 (1984) (concluding from review of Seventh Circuit cases that mere informal

13

understanding as to nonparticipation and uncontradicted affidavits denying past or future disclosure of confidences within targeted law firm are insufficient to rebut presumption of intra-firm knowledge).  What is striking is that from all appearances, Lawton & Cates took no steps to institute such formal procedures with respect to this case when Lautenschlager and Bach joined the firm.  Arellano has averred that he did not think there was any conflict of interest, but he does not explain the basis for this belief.  From the court's perspective, *someone* at Lawton & Cates ought to have recognized that because Lautenschlager and Bach served as the state's top law enforcement officials at the time George was under investigation, they had a potential conflict of interest that required formal screening in any case the firm had against George.  The firm's failure to institute formal screening measures at the time Lautenschlager and Bach joined the firm mandates disqualification.

    I am mindful that this decision will pose a hardship to plaintiff, who must replace the lawyer who has represented her in several administrative proceedings leading up to this lawsuit.  However, this lawsuit is still in its early stages.  Plaintiff ought to be able to find successor counsel who can get up to speed with relatively little delay in the proceedings.  I will continue the stay that is currently in place to allow plaintiff time to retain new counsel.

    As harsh as this result is for plaintiff, to allow Lawton & Cates to remain on this case would effectively write the screening requirement out of Rule 20.1.11 and send a message

to attorneys practicing in this court that the court does not take the Rules of Professional Conduct seriously. I am not willing to endorse such a result.

ORDER

IT IS ORDERED that the motion of defendant Gary George for an order disqualifying plaintiff Delilah Tucker's attorney is GRANTED.

Entered this 1st day of August, 2008.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge

15