IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

---

DELILAH TUCKER,

                Plaintiff,               OPINION AND ORDER

     v.                                08-cv-0024-bbc

GARY E. GEORGE and DAN ROSSMILLER,

                Defendants.

---

Before the court is the motion of defendants Gary George and Dan Rossmiller to dismiss plaintiff Delilah Tucker's amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). In the amended complaint, plaintiff alleges that defendants violated her rights under the equal protection clause and the First Amendment when they took adverse employment actions against her on the basis of her sex, race and age and in retaliation for her speaking out against certain workplace practices. Defendants contend that the equal protection claim, alleged for the first time in the amended complaint, must be dismissed because it is barred by the statute of limitations and does not "relate back" to the original complaint. They contend that plaintiff's First Amendment claim must be dismissed because it fails to state a claim upon which relief may be granted.

1

Defendants' motion will be denied. Plaintiff's new equal protection claim arises from the same course of conduct that she alleged in her original complaint and therefore relation back is proper under Fed. R. Civ. P. 15(c). As for plaintiff's First Amendment claim, which has not changed from the original complaint, defendants have offered no convincing reason why I should revisit the previous finding that the claim survived dismissal Fed. R. Civ. P. 12(b)(6).

BACKGROUND

On December 4, 2007, plaintiff filed a complaint in the Circuit Court for Dane County, Wisconsin, alleging that former state senator George and his chief of staff, defendant Rossmiller, violated her constitutional right to free speech by retaliating against her for speaking out against certain workplace practices while she was employed as a legislative aide in George's senate office. Plaintiff also brought a due process claim and a claim under 42 U.S.C. § 1985 for conspiracy to violate civil rights. In the paragraph of her complaint describing the "nature of the case," plaintiff stated that she was asserting a violation of her right to free speech and association with respect to matters of public concern, one of which was her objection "to highly discriminatory and sexually offensive work environment in the work place." Cpt., dkt. #1, ¶1. In addition, she accused

2

defendants of engaging jointly "in a pattern of retaliatory conduct designed for the sole purpose of affecting the terms and conditions of her employment in an adverse fashion." Id.

In the original complaint, plaintiff alleged the following facts:

Plaintiff is a 47-year-old African-American woman (¶2);

In June 2001, plaintiff began working as a full-time legislative aide in defendant George's senate office under the supervision of George and defendant Rossmiller (¶7);

Within a few months of being hired, plaintiff began to object to certain practices within the work place that appeared to plaintiff to violate certain legal and policy standards, "including but not limited to the following":

> being assigned during state paid time to handle personal and family-related business of defendant George;
>
> being assigned during state paid time to engage in political campaign work;
>
> the use of state funds to recruit a foreign European Caucasian female at a time when plaintiff was being told that her job was being eliminated because of "budget constraints;" and
>
> the display of pornography during working hours while at the office of defendants (¶9);

As a result of plaintiff's objections to these practices, plaintiff was subjected to retaliatory actions, "which included but were not limited to the following":

> belittlement and humiliation in front of her coworkers and peers;
>
> threats of dismissal if she did not clean up her "sister act";

3

>the orchestration of a scheme to lay plaintiff off;
>
>the physical restraint of plaintiff when she attempted to leave the office during an argument in which she voiced opposition to certain office practices that plaintiff believed violated state policies and procedures; and
>
>ultimately, the termination of her employment (¶10);

in the hope of rectifying these "unlawful and discriminatory conditions," plaintiff brought these matters to the attention of defendants George and Rossmiller and "other persons in authority," but no one took any action to improve plaintiff's work conditions (¶11);

defendant George told plaintiff that she should "start looking for employment elsewhere" and said that a reduction in staff would be necessary "due to budgetary considerations", when in fact, he knew that budgetary considerations did not require a reduction in office staff and that he was actively recruiting a person who was white, of European origin and younger than plaintiff to fill the position then held by plaintiff (¶¶12-13).

On January 14, 2008, defendant Rossmiller removed the case to this court. Simultaneously, he moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (At the time, defendant George had not yet been served.) On March 13, 2008, I entered an order granting defendant's motion with respect to plaintiff's due process claim but denying it with respect to plaintiff's claims under 42 U.S.C. § 1983 and § 1985. Opin. and Order, March 13, 2008, dkt. #13. Considering plaintiff's First Amendment claim, I found that because it was not clear from the complaint that plaintiff's speech was made pursuant to her official duties, her claim did not necessarily fail under the

4

holding of <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 421-23 (2005). <u>Id</u>. at 5-7. In this regard, I noted that "plaintiff's complaint in this case contains no allegations about what her job as a legislative aide entailed, to whom she initially voiced her objections or the setting in which she voiced those objections," all of which were facts relevant to deciding whether plaintiff's speech was subject to the "official duties" disqualifier. <u>Id</u>., at 7.

On June 27, 2008, after defendant George had been served, he filed a motion to disqualify plaintiff's counsel. Proceedings were stayed pending resolution of that motion. On August 1 and September 2, 2008, respectively, I granted the motion and denied a subsequent motion for reconsideration. On December 11, 2008, attorney Jeff Scott Olson entered his appearance as successor counsel for plaintiff. The magistrate judge issued a new pretrial conference order, allowing the parties until February 13, 2009 to file amendments to the pleadings. On February 19, 2009, plaintiff filed a proposed amended complaint, along with a stipulation from defendants agreeing that plaintiff could file the amended complaint even though the February 13 deadline had passed. On February 24, 2009, I approved that stipulation.

In the amended complaint, plaintiff alleges the following additional facts:

While [she was] employed under the supervision of defendant George, defendants subjected her to harassment and other adverse conditions of employment on account of her race, sex and age (¶403);

5

Plaintiff complained that the recruitment of a foreign European female at a time when plaintiff was being told her job was being eliminated due to budget constraints amounted to discrimination against her on the basis of race, color and ethnicity (¶406);

Plaintiff was subject to a layoff "on the pretext" that budgetary projections required it (¶408(b));

The name of the white, European female was Katja Kandolin (¶411);

In a letter dated December 15, 2001, defendants offered Kandolin a position in defendant George's office (¶413);

In a letter dated February 1, 2002, defendant Rossmiller informed the manager of legislative human resources that plaintiff was laid off effective February 1, 2002 because of "budget projections indicating a need to immediately reduce staff levels" (¶414);

Plaintiff submitted a letter of resignation to defendants dated February 4, 2002, attributing her decision to resign to her hostile work environment and to discrimination (¶415); and

Attached to plaintiff's February 4, 2002 letter is a note from plaintiff stating that she was declining defendants' offer to remain on the job and look for employment and was refusing to train the person taking the job "who would get paid more than she had because the new person was white or looked more attractive" (¶416).

In the amended complaint, plaintiff alleges two causes of action: 1) defendants violated plaintiff's rights under the equal protection clause by subjecting her to a hostile work environment and discriminatory conditions of employment and ultimately terminating her employment because of her race, sex and age; and 2) defendants violated plaintiff's rights under the First and Fourteenth Amendments when they retaliated against her for speaking

6

out on matters of public concern by subjecting her to a hostile work environment and discriminatory conditions of employment and ultimately, terminating her employment. Plaintiff is no longer pursuing her claim under 42 U.S.C. § 1985.

OPINION

A.  Equal Protection Claim

As an initial matter, I note that, like plaintiff's original complaint, her amended complaint is not a model of clarity.  With respect to her new equal protection claim, plaintiff has made the omnibus allegation that defendants discriminated against her and subjected her to a hostile environment because of her "race, sex, and age" without specifying which of defendants' alleged discriminatory actions were based on gender, which were based on race and which were based on age.  Nonetheless, it is clear enough from the complaint that plaintiff is claiming that she was discriminated against on the basis of race and age when defendants attempted to hire a younger, white woman to replace her at a time when she was being told by defendants that her job was going to be eliminated for financial reasons. (Whether plaintiff can prosecute her age discrimination claim by way of a § 1983 equal protection claim is in serious doubt, however.  Ahlmeyer v. Nevada System of Higher Education, 555 F.3d 1051, 1055-58 (9th Cir. 2009) (joining Fourth, Fifth and Tenth Circuits in holding that ADEA is exclusive remedy for claims of age discrimination in

7

employment)).) It is also clear that plaintiff has alleged facts that arguably support a claim of hostile work environment, although it is unclear whether the alleged harassment was gender-based, race-based or both. (In her brief, plaintiff asserts that it was gender-based.)

In any case, defendants have raised no Rule 8 objection to the amended complaint or moved to dismiss the equal protection claim under Rule 12(b)(6). The issue raised by defendants' motion to dismiss is whether the new claims of harassment and discrimination, brought under § 1983 as a violation of plaintiff's rights to equal protection, "relate back" to plaintiff's original complaint. If they do not, then the equal protection claim must be dismissed because, as plaintiff concedes, she did not bring the claim until after the applicable limitations period had expired.

For a claim in an amended pleading to relate back to the original pleading, it must arise "out of the conduct, transaction, or occurrence set out---or attempted to be set out---in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Expanding on this language, the Supreme Court has said that relation back is in order so long as the original and amended complaints state claims that are "tied to a common core of operative facts." Mayle v. Felix, 545 U.S. 644, 650 (2005). On the other hand, when the claim in the amended complaint rests on facts "that differ in both time and type" from those in the original pleading, relation back should not be permitted. Id. at 657.

8

Plaintiff argues that relation back is proper because her amended complaint does little more than pursue a new theory of recovery under the same set of facts alleged in her original complaint. Bularz v. Prudential Insurance Company of America, 93 F.3d 372, 379 (7th Cir. 1996) ("In general, relation back is permitted under Rule [15(c)(1)(B)] where an amended complaint asserts a new claim on the basis of the same core of facts, but involving a different substantive legal theory than that advanced in the original pleading."); 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1497 (2d ed. 1990) ("the fact that an amendment changes the legal theory on which the action initially was brought is of no consequence if the factual situation upon which the action depends remains the same and has been brought to defendant's attention by the original pleading"). She asserts that her initial complaint contained allegations sufficient to notify defendants that she was contending that equal protection violations had occurred, namely: that she was a member of three protected classes (sex, race and age); that she suffered an adverse employment action (hostile environment and termination); that she was being replaced by someone similarly situated but not in the protected classes (race and age); and that defendants' actions were "discriminatory." In addition, she argues, the complaint contained allegations sufficient to notify defendants that she was complaining about gender-based discrimination based on hostile work environment, insofar as she had alleged that

pornography had been displayed at work and that she had been subjected to derogatory language and physical restraint.

Defendants contend that plaintiff's approach to the relation-back inquiry is too broad. They argue that, after Felix, it is not enough that plaintiff's original complaint happened to include facts that arguably could have supported the new equal protection claims that she brings in her amended complaint. Instead, the comparison must be between the "operative facts" of the old and new claims, which defendants contend are those facts that would be necessary to prove the "essential elements" of the old and new claims. Under this more focused analysis, argue defendants, the new equal protection claim does not relate back to either the First Amendment retaliation or § 1985 claim asserted in the original complaint because the claims depend on different facts. Defendants argue that to prove her retaliation and § 1985(3) claims, plaintiff would have to show that 1) that she engaged in protected speech, 2) that defendants took action meant to chill or punish her for that speech; and 3) for the § 1985(3) claim, that defendants conspired with each other to retaliate against plaintiff for engaging in protected speech, whereas proving her equal protection claims depends upon whether 1) plaintiff was a member of a protected class; and 2) her employer took adverse action against her because of that membership. Because these facts differ in both "time and type," say defendants, relation back should not be allowed.

Although defendants make a strong argument, in the end I am persuaded that the amended complaint relates back to the original complaint under Rule 15(c)(1)(B). As an initial matter, I am not convinced that the Court's decision in Felix, 545 U.S. 644, altered the legal landscape significantly with respect to the relation-back rule. At issue in Felix was the liberal pleading policy, followed in the Ninth and Seventh circuits, that allowed an amended habeas petition to relate back to the date of the original petition so long as the new claims arose from the same "trial, conviction or sentence" that was the subject of the original petition. Id. at 656. The Court struck down this broad interpretation of Rule 15(c), explaining that the test for relation-back in the habeas context was the same as that which courts had been applying in ordinarily civil proceedings: it was proper only so long as a "common core of operative facts" united the original and newly-asserted claims. Id. at 659 (citing Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc., 690 F.2d 1240, 1259, n. 29 (9th Cir. 1982) and 6A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1497, p. 85 (2d ed. 1990)). Contrary to the position urged by defendants in this case, the Court did not signal any change in the test for relation back, but merely exhorted lower courts to apply it the same way in habeas cases as they did for "run-of-the-mine" civil proceedings. Id. at 657.

In any case, even if Felix does stand for the proposition that courts should insist on a fairly specific degree of identity between claims asserted in an original and amended

11

pleading for relation back to apply, that standard is met in this case.  In her amended complaint, plaintiff has not alleged any new events or episodes or attempted to seek relief for anything that occurred at a time or place different from those alleged in the pattern of conduct she described in her original complaint.  As outlined above, plaintiff alleged in her original complaint that:

> She was a 47-year-old African-American female;
>
> Her employer had been attempting to recruit a younger, white female to replace her while at the same informing plaintiff that her position would have to be eliminated because of budget constraints;
>
> After objecting to this and other workplace practices, plaintiff was subject to various forms of harassment in the workplace, including being told to clean up her "sister act;"
>
> Plaintiff complained to defendants and others about this "highly discriminatory and sexually offensive work environment" and other workplace practices that she perceived as illegal;
>
> In retaliation for plaintiff having made these complaints, defendant George told plaintiff to start looking for a new job and falsely represented to her that a reduction and staff would be necessary, knowing that he was at that time actively recruiting a person to fill plaintiff's position who was white and younger than plaintiff; and
>
> Defendants ultimately caused her termination.

Although plaintiff ultimately asserted only causes of action for First Amendment retaliation and for conspiracy to deprive her of her civil rights, her factual allegations plainly described a course of conduct that involved not only retaliation, but discriminatory treatment and

12

harassment.  In fact, it is reasonable to read plaintiff's original complaint as asserting that the retaliation and the harassment/discrimination were one and the same, that is, that the *ways* in which defendants retaliated against plaintiff were to subject her to a hostile work environment and ultimately, to cause her termination with the intent of replacing her with a younger, white woman.  (That said, it appears that the recruitment of a younger, white woman was under way before plaintiff allegedly engaged in protected speech, insofar as that conduct was one of the "workplace practices" about which plaintiff complained.  Thus, the alleged discrimination occurred both before and after plaintiff spoke out.)  Thus, the equal protection claims for which plaintiff now seeks to recover share a common core of operative facts with the retaliation claim originally asserted.

Furthermore, plaintiff's original complaint asserted a cause of action under § 1985. Although plaintiff did not specify under which subsection or clause of that statute she was proceeding and did not articulate the specific basis for her claim, the nature of her claim can be inferred from what she did *not* allege.  Plaintiff did not allege that she was a federal officer or a party or witness in a federal proceeding as required under § 1985(1) or (2) that defendants conspired to prevent her from giving her support or advocacy to a candidate in a federal election, as required under the second part of § 1985(3).  Kush v. Rutledge, 460 U.S. 719, 724 (1983) (identifying various claims that can be brought under § 1985).  This meant that the only plausible option was the first clause of § 1985(3), which outlaws

13

conspiracies interfering with the private enjoyment of "equal protection of the laws" and "equal privileges and immunities under the laws." To prove a private conspiracy in violation of this clause, plaintiff would have to show that "some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). Thus, by pleading a cause of action under § 1985, plaintiff alerted defendants, albeit indirectly, that she was seeking to hold them liable not just for retaliation, but also for taking discriminatory employment actions against her.

Defendants cite Jones v. Bernanke, 557 F.3d 670 (D.C. Cir. 2009), but it does not advance their position. In that case, the plaintiff alleged in his original complaint that his employer had taken adverse actions against him in retaliation for his having filed administrative complaints of gender and age discrimination. Nearly a year later, he filed a motion to amend his complaint to add the underlying Title VII and ADEA discrimination claims. The employer opposed the motion, arguing that the gender and age discrimination claims were untimely because the plaintiff had failed to bring them within 90 days of receiving his right-to-sue letter from the Equal Employment Opportunity Commission. The district court allowed the plaintiff to amend his complaint, reasoning that because the amended complaint "buil[t] on previously alleged facts" and the "defendant had notice of the discrimination claims," it related back to the original complaint. Id. at 674.

14

The court of appeals disagreed. Although it recognized that it was possible for an employee to allege "both discrimination and retaliation based on the same incident," the plaintiff had not done so: instead, he alleged that his employer "initially discriminated against him when it denied him a promotion, and then---some 32 months later, at least---retaliated against him when it downgraded his evaluations in reaction to his discrimination complaints." Id. The court found it significant that nowhere in the original complaint had plaintiff mentioned the facts underlying his discrimination claims, namely, that a lesser qualified, younger woman had been selected over him for the promotion. Rather, plaintiff had merely "alluded" to his discrimination claims in a single paragraph, wherein he alleged only that he had filed an administrative complaint alleging age and gender discrimination and that he had named his immediate supervisor as one of the primary wrongdoers.

In contrast, plaintiff in this case did not merely "allude" to defendants' alleged discrimination and harassment in her original complaint. Instead, she described it with some specificity: defendants were attempting to hire a younger, white woman while at the same time telling plaintiff that her position was going to be eliminated for budgetary reasons, and were subjecting her to a hostile work environment. Further, the retaliation and discrimination in this case are closely linked in time if not arising from the same incident, whereas in Jones, a gap of nearly three years separated the alleged retaliation from the discrimination. Thus, Jones does not compel a decision in favor of defendants.

15

Finally, it is worth noting that a plaintiff need plead no legal theories at all. Vidimos, Inc. v. Laser Lab Ltd., 99 F.3d 217, 222 (7th Cir. 1996). So long as the original and amended complaints arise from the same "claim," "there is no burden on the plaintiff to justify its altering its original theory." Id. In the relation-back context, the question for the court is "whether the original complaint gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one." Marshall v. H & R Block Tax Services, Inc., -- F.3d --, 2009 WL 1149558, *3 (7th Cir. 2009) (quoting Santamarina v. Sears, Roebuck & Co., 466 F.3d 570, 573 (7th Cir. 2006)); see also Meijer, Inc. v. Biovail Corp., 533 F.3d 857, 866 (D.C. Cir. 2008) (even amendment that shares "some elements and some facts in common" with original pleading does not relate back if its effect is "to fault [the defendants] for conduct different from that identified in the original complaint").

A defendant is more likely to be surprised by new allegations when the previous complaints contained very specific allegations that focused the issues very narrowly. Johnson v. Methodist Medical Center of Illinois, 10 F.3d 1300, 1304 (7th Cir. 1993) (district court did not abuse its discretion in denying plaintiff's motion to file third amended complaint raising new allegations against additional actors where initial complaints alleged specific acts of negligence against different actors). In this case, however, defendants cannot reasonably claim surprise. It is far from clear from the poorly-worded and vague nature of the initial

16

complaint that plaintiff had opted to allege only First Amendment retaliation and abandon any equal protection claims; to the contrary, the complaint "fairly breathes" race- or gender-based discrimination. Vidimos, 99 F.3d at 222.

Further, even if it was not unreasonable for defendants to have assumed from the complaint that plaintiff had effectively abandoned any equal protection claims, they have not shown that they relied on that assumption to their detriment. Proceedings in this case, including discovery, were stayed from July 2008 to January 2009 while the court resolved defendant George's motion to disqualify plaintiff's former law firm and plaintiff subsequently was forced to find successor counsel. Thus, in spite of this case's age, it is effectively still in its initial stages. Cf. Jones, 557 F.3d at 673 (plaintiff moved to amend complaint while summary judgment on retaliation claim was pending); Johnson, 10 F.3d at 1304 (plaintiff sought to file third amended complaint four years after commencing action and after defendant had moved for summary judgment on second amended complaint). Much of the delay in the filing of plaintiff's amended complaint was prompted by the motion to disqualify counsel. Defendants should not have been surprised that a new lawyer might see the case differently from his predecessor and might seek to amend the complaint to assert a new claim. Given this, along with the facts alleged in the initial complaint, defendants cannot reasonably claim to have been surprised or prejudiced by the inclusion of the equal protection claims in the amended complaint.

In sum, I am satisfied that the equal protection claims asserted in the amended complaint stem from the same conduct, transaction or occurrence as that described in the initial complaint. Accordingly, it relates back to the date of the original complaint and is not untimely.

### B. First Amendment Claim

Relying on Garcetti v. Ceballos, 547 U.S. 410, 420-23 (2005), and subsequent cases, defendants contend that plaintiff's First Amendment claim fails to state a claim upon which relief can be granted. Defendant Rossmiller raised this same argument previously, albeit in less-developed form, in his motion to dismiss plaintiff's initial complaint. Because plaintiff's First Amendment claim has not changed from her initial complaint, defendants are essentially asking for reconsideration of the March 13, 2008 decision. I decline to grant the motion. Defendants do not point to any change in the law regarding First Amendment claims by a government employee since the March 13, 2008 decision and they have offered no compelling reason why they did not make these same arguments in their initial motion to dismiss. (Ashcroft v. Iqbal, -- S. Ct. ---, 2009 WL 1361536 (May 18, 2009), decided after defendants filed their reply brief, is not on point: defendants are not asserting that plaintiff's complaint did not meet the standard necessary to comply with Fed. R. Civ. P. 8, as was the case in Iqbal, but rather are arguing that there is *no* set of facts under

18

which plaintiff can prevail on her First Amendment retaliation claim.) Accordingly, even if my prior order does not stand as the "law of the case," I decline to revisit it. Defendants can raise their arguments in a motion for summary judgment, after the facts have been developed.

## ORDER

IT IS ORDERED that the motion of defendants Gary George and Dan Rossmiller to dismiss plaintiff's amended complaint is DENIED.

Entered this 21st day of May, 2009.

                              BY THE COURT:

                              /s/
                              _____
                              BARBARA B. CRABB
                              District Judge